Date signed September 29, 2006



THOMAS J. CATLIOTA
U. S. BANKRUPTCY JUDGE

**IN THE UNITED STATES BANK**
**FOR THE DISTRICT OF MARYLAND**
**at GREENBELT**

| | | |
|---|---|---|
| In re: | * | |
| Victoria Henry-Chandler | * | Case No.  05-11878-TJC |
| | * | |
| (Debtor) | * | (Chapter 7) |
| | * | |
| | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM OF DECISION DENYING THE TRUSTEE'S MOTION TO STRIKE DEBTOR'S AMENDED EXEMPTIONS (DOCKET 18)

Victoria Henry-Chandler (the "Debtor") filed an amended Schedule C that

exempted her interest in certain real property.  Roger Schlossberg, the Chapter 7 Trustee,

filed the Trustee's Motion to Strike Amended Exemption (the "Motion") (Docket 18)[1],

arguing that because he had incurred costs and otherwise was prejudiced by his effort to

liquidate the property, the proposed amendment should be stricken.  For the reasons

stated herein, the Motion will be denied and the Debtor's exemption will be allowed

subject to reimbursement to the Trustee of a portion of the costs he incurred in his

attempt to administer the property prior to Debtor's filing of the amended Schedule C.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, 28

U.S.C. § 157(a), and the standing order of reference of the United States District Court

---

[1] All citations to docket entries are to entries made in the main bankruptcy case, No. 05-11878, unless
otherwise indicated.

for the District of Maryland.  Venue is proper in this District pursuant to 28 U.S.C. §

1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).  The following

constitutes the Court's findings of fact and conclusions of law.

### FINDINGS OF FACT

On January 28, 2005, the Debtor filed a voluntary petition under Chapter 7 of the

Bankruptcy Code[2].  Roger Schlossberg was appointed the Chapter 7 Trustee (the

"Trustee").  On her original Schedule A filed concomitantly with the petition, the Debtor

listed a one half interest in certain real property and improvements at 2106 Blaz Court,

Upper Marlboro, MD 20774 (the "Realty").  The Debtor listed her interest in the Realty

as a tenancy by the entirety on her Schedule A; however, she claimed no exemption in

the Realty on her original "Schedule C – Property Claimed As Exempt" that she also

filed with the petition.  The Trustee conducted the meeting of creditors pursuant to 11

U.S.C. §341 on March 9, 2005.  On March 30, 2005, the Debtor, at the request of the

Trustee, provided the Trustee a certified copy of the recorded deed verifying that the

Debtor held her interest in the Realty as a tenancy by the entirety held with her husband,

Thomas J. Chandler ("Chandler").

Shortly thereafter, on May 20, 2005, the Trustee filed a Designation as Asset Case

and Request to Set Claims Bar Date (Docket 10), stating that he "believes this case

contains assets administrable for the benefit of creditors" and requesting that the Clerk

---

[2] To the extent the facts herein were neither obtained from the parties' pleadings nor established at the hearing held on this matter on April 5, 2006, the Court takes judicial notice of the docket entries in this case as well as the corresponding adversary proceeding pursuant to Fed. R. Evid. 201, made applicable in bankruptcy pursuant to Fed. R. Bankr. P. 9017.

issue a notice to creditors setting a deadline to file proofs of claim.[3]  Docket 10 at 1.  The

Trustee also filed a motion to employ himself as counsel to the estate "[t]o assist the

Trustee in the investigation and possible sale of the real estate located at 2106 Blaz Court,

Upper Marlboro, MD 20774-5637."  Docket 11 at 1.  The Court entered an order granting

the Trustee's application on May 23, 2005.

On October 6, 2005, as a result of the Debtor's failure to exempt her interest in the

Realty, the Trustee initiated Adversary Proceeding No. 05-01989 (the "Adversary

Proceeding") by filing the Trustee's Complaint to Sell Real Property Free and Clear of

Interest of Co-Owner against Chandler, the co-owner of the Realty.  The complaint

sought authority for the Trustee to sell the interest of both the Debtor and Chandler in the

Realty pursuant to 11 U.S.C. § 363(h).  The Trustee submitted as an exhibit to the

complaint the deed evidencing that the Realty was owned as tenants by the entirety, but

the complaint did not otherwise address that the Realty was owned as tenants by the

entirety or state what authority the Trustee relied upon to sell both the Debtor's and

Chandler's interest in the Realty in light of the tenancy.  The complaint made no mention

that the Debtor did not claim her interest in the Realty to be exempt.  See Complaint,

Docket 1 in Adversary Proceeding 05-01989.

On November 23, 2005, Chandler filed a Motion for More Definite Statement in

which he contended that there was no dispute that the Realty was owned as tenants by the

entirety, and the complaint did not allege any basis upon which the tenancy could be

severed.  Docket 4 in Adversary Proceeding 05-01989.  The Trustee filed an objection to

this motion, and again failed to identify that the Realty was owned as tenants by the

---

[3] There is no dispute between the parties that the Debtor's interest in the Realty is the only potentially nonexempt asset in the estate.

entirety or state that the Debtor did not claim that her interest in the Realty was exempt.

The Court granted Chandler's motion and required the Trustee to "allege sufficient facts

upon which he is relying in order to justify the severing of the tenants by the entirety"

with respect to the Realty.  Docket 6 in Adversary Proceeding 05-01989.

The Trustee filed an amended complaint on January 3, 2006.  In the amended

complaint, the Trustee for the first time stated that the Debtor had not claimed the Realty

as exempt under Schedule C.  See Docket 9, Amended Complaint at ¶5 in Adversary

Proceeding 05-01989.  Thereafter, on January 31, 2006, the Debtor filed her amended

Schedule C, claiming an exemption in the Realty of $116,000.00 pursuant to 11 U.S.C. §

522(b)(3)(B).[4]

In response, the Trustee filed the Motion, seeking to strike the amended

exemption and arguing that allowing the amendment would prejudice the Trustee and

impair the diligent administration of the estate.  Particularly, the Trustee contended that

he incurred various expenses in his attempts to sell the Realty; namely, a title

examination costing $126.25, and that he incurred attorney time in making the above-

referenced filings (which attorney time was established at the hearing on the Motion to be

somewhat less than six hours).  Additionally, the Trustee stated that he contacted a real

estate broker, Patricia Frostbutter, who informed him that based on comparable home

sales in the area she believed there was sufficient equity in the Realty.

The Debtor countered by contending that the Trustee's conduct in pursuing the

sale of the Realty revealed a "gotcha" attitude.  Docket 20 at 4, ¶10.  Specifically, the

---

[4] While the amended schedule grounds the exemption in 11 U.S.C. § 522(b)(3)(B), it is obvious to the Court after the hearing on April 5, 2006, that the Debtor intended to cite to 11 U.S.C.§ 522(b)(2)(B).  As this case was filed prior to the effective date of the Bankruptcy Abuse and Consumer Protection Act of 2005.

Debtor contended that although the original Schedule C did not list that the Realty was exempt, Schedule A expressly provided that the Debtor's interest in the Realty was held as a tenancy by the entirety and that the Debtor timely delivered to the Trustee a deed that plainly stated on its face that the Realty was held as tenants by the entirety. Consequently, the Trustee knew or should have known that the Realty was held as a tenancy by the entirety. Additionally, the Debtor contended that the complaint in the Adversary Proceeding did not adequately state the basis for the relief the Trustee sought; namely, that the original Schedule C did not list the Realty as exempt. Finally, the Debtor argued that at any time since the commencement of the bankruptcy case in January of 2005, the Trustee could have inquired about the failure of the Debtor to exempt the Realty, particularly when he knew based on Schedule A and on the copy of the deed that was provided to him on March 30, 2005, that the Realty was held as tenants by the entirety.

A hearing was held on the Motion on April 5, 2006.[5] At the hearing, the Debtor's counsel conceded that the failure of the Debtor to list her interest in the Realty on the original Schedule C was an oversight:

The Court:                …why did the Debtor not claim the property as exempt

originally, and then for a period of approximately a year?

---

[5] While the hearing was conducted by the Honorable Nancy V. Alquist, to whom this case was previously assigned, this Judge had been sworn in and sat through the hearing. In addition this Judge has reviewed the transcript of the hearing. Nevertheless, because this Judge did not preside at the hearing, the Court set the matter in for rehearing to give the parties an opportunity "to supplement the arguments they made at the April 5, 2006 hearing, if they wish." Docket 24. After one party sought a continuance of the rehearing, the Court entered an order that provided that if either party wanted the Court to conduct a rehearing, counsel should contact the Courtroom Deputy within 14 days. Docket 28. No party requested a rehearing. Accordingly, the Court is satisfied that the record, as it stands, is not prejudicial to either party and a decision is appropriate.

Debtor's Counsel:     The honest answer is a mistake. The property was listed on

Schedule A as tenants by the entirety property.  It was always meant to be claimed

as tenancy by the entirety property, and we furnished the deed to the Trustee back

in March of 2005, showing it was a tenancy by the entirety.

I, unfortunately, did not have a clue that the Trustee was raising the issue

with the exemptions, or any issue with Schedule C until January of 2006, when he

filed his amended complaint.

Transcript of Hearing on April 5, 2006 at 39 (Docket 25) (Hereinafter "Transcript at

__")[6].  At the hearing, the parties agreed that if the Court denies the Motion, the Debtor

will retain her exempt interest in the Realty and the Adversary Proceeding will be

resolved.  The parties further agreed that there are no other nonexempt assets in the estate

to administer, and the denial of the Motion would essentially resolve the main bankruptcy

case as well.


### *CONCLUSIONS OF LAW*

Fed. R. Bankr. P. 4003 requires a debtor to list property claimed as exempt under

11 U.S.C. § 522 on the schedule of assets required to be filed by Fed. R. Bankr. P. 1007.

Fed. R. Bankr. P. 1009(a) gives the debtor a general right to amend a voluntary petition,

list, schedule, or statement as a matter of course at any time before the case is closed

provided, however, that debtor gives notice of the amendment to the trustee and to any

entity affected thereby.

---

[6] Although the Transcript states on its face that it was from a hearing on January 25, 2006, there is no doubt
that it is a transcript of the hearing from April 5, 2006. See e.g. Transcript at 5 (Noting for the record the
presence of Judge Catliota, who was "sworn in before the Court on Monday.")

Although the "clear mandate of the rule…is to allow amendments freely," <u>Tignor v. Parkinson (in re Tignor)</u>, 729 F.2d 977, 979 (4th Cir. 1984), <u>superseded by statute</u>, Va. Code Ann. tit. 35, § 28.1 (1990) on other grounds, <u>as recognized in</u> <u>In re Cassell</u>, 23 F.3d 400 (4th Cir. 1994), "exceptional circumstances" may prevent a debtor from amending his petition or schedules. <u>Id.</u> at 979. A debtor may be denied the right to amend his schedules if there is a showing of bad faith or if allowing the amendment may result in prejudice to creditors. <u>Id.</u> (citing <u>In re Doan</u>, 672 F.2d 831, 833 (11th Cir. 1982)).

In <u>Tignor</u>, the debtor had initially scheduled a personal injury lawsuit on his schedule of assets and listed the value as unknown. Eight months after the meeting of creditors, the debtor settled the lawsuit for $150,000. Four months later, the debtor filed an amended schedule of exemptions claiming the entire amount of the settlement as exempt. The trustee objected to the amended exemptions and argued that he had incurred legal fees and costs in securing the proceeds of the claim for the benefit of creditors of the bankruptcy estate. Additionally, the trustee contended that creditors were entitled to rely on the personal injury claim recovery as a source of payment because the debtor failed to exempt any potential recovery for more then a year after the meeting of creditors. Notwithstanding the trustee's position, the Court permitted the debtor to amend his claimed exemptions. The Court explained:

> No exceptional circumstances are present here which warrant denial of the debtor's amendment. The trustee may not successfully claim detrimental reliance simply because a schedule that could be amended was in fact amended, nor may he claim laches simply because of the passage of time between the petition or the creditors' meeting and the amendment.

Id. at 979.  The mere fact that allowing the debtor to amend his claimed exemptions

would result in lesser recovery to creditors does not suffice to constitute prejudice.  See

Collier on Bankruptcy-15th Edition Rev. Vol. P. 1009.02

> In determining whether the amendment would prejudice
> creditors, the appropriate inquiry is not whether a creditor
> will recover less or be adversely affected by the
> amendment.  Instead, a court must determine whether the
> creditor would be adversely affected by having
> detrimentally relied on the debtor's initial position.  Only
> when a creditor has changed its position in reliance on the
> original statement, and would be adversely affected by
> amendment to that statement, may it be said that the
> creditor will be prejudiced by permitting the amendment.

 Id.  Additionally, courts have held that prejudice alone does not suffice to disallow the

amended exemptions.  Rather, "…the court must balance the prejudice to the debtor of

disallowing the exemption against the prejudice to third parties in allowing the

exemption."  In re Arnold, 252 B.R. 778, 785 (B.A.P. 9th Cir. 2000) (citing In re Osborn,

24 F.3d 1199, 1205-06 (10th Cir.1994)) (rehearing denied); Barrett v. Commonwealth

Fed. Sav. and Loan Ass'n, 111 B.R. 78, 81 (E.D. Pa. 1990) (applying the same analysis

and allowing the Debtor to amend his list of creditors).

        In the instant case, allowing the Debtor to amend her Schedule C to include her

interest in the Realty would not prejudice any creditors.  According to Schedule F, as

well as the Trustee's proffer at the hearing, no joint creditors exist that, absent the striking

of the amendment, would permit the Trustee to sell the property.  As noted above, the

mere fact that creditors will recover less as a result of the amendment does not suffice to

constitute prejudice.  Nothing in the record demonstrates that any creditor detrimentally

relied on the Debtor's initial failure to exempt the Realty.  Indeed, striking the exemption

could result in a substantial windfall to the Debtor's unsecured creditors, all of whom are

individual creditors of the Debtor and are not joint creditors of the Debtor and

Defendant.[7]  As such, these unsecured creditors had no expectation or right to the

Debtor's interest in the Realty at the time the case was filed, and certainly would not be

entitled to recover Debtor's interest in the Realty outside of bankruptcy. By the same

token, striking the amended exemption would result in severe prejudice to the Debtor

because the Trustee would seek to liquidate the Realty -- which itself is substantial

prejudice -- and make a distribution to the Debtor's individual unsecured creditors out of

the Debtor's interest in the Realty[8].  The Debtor thereby would be denied the very

protection that tenancy by the entirety provides.  See generally Sumy v. Schlossberg, 777

F.2d 921 (4th Cir. 1985).

　　　　In contrast, only the Trustee potentially will be prejudiced if the exemption is

allowed because he took certain steps to administer the Realty based on the Debtor's

failure to exempt it.  In arguing that the prejudice to the Trustee is sufficient to establish

the "exceptional circumstances" standard of Tignor, the Trustee makes both a broad,

systemic claim of prejudice as well as a more case-specific claim.

　　　　With respect to the broader approach, the Trustee argues that mistakes by debtors,

such as the Debtor's failure to include the Realty on the original Schedule C, cause

substantial detriment to the administration of bankruptcy cases by Chapter 7 trustees.

> The Trustee panel is the grease that makes the Court
> move in Chapter 7 cases. I'm not trying to suggest that we're

---

[7] See Transcript at 9.

[8] This is not to say that the Trustee, absent the exemption, would necessarily be accorded the right to liquidate the Realty. Because the amended exemption will be allowed, the Court makes no finding with respect to the Trustee's ability to liquidate the Realty absent the amended exemption.

altruists. We're out there making our $60 a case in those to
get them done, and we're [administering] about 1,200 cases a year,
up until last October 17th, and we're getting them all done.
This kind of case puts you behind the 8-ball, creates
a flood of paper, a ton of time, travel down here to court, and
leaves us with nothing for the effort….

Transcript at 13.

In focusing his claim of prejudice to the instant case, the Trustee points out that he

incurred $126.25 in ordering the title examination report and generated somewhat less

than six hours of attorney time in investigating the Realty and preparing and filing the

complaints in the Adversary Proceeding and the other related filings.

In support of his position, the Trustee identifies several cases where prejudice to

the Trustee sufficed to deny the Debtor's amended exemptions.  However, these

authorities are distinguishable from the case at bar.

The Trustee points to In re Cudeyro. 213 B.R. 910 (Bankr. E.D. Pa. 1997).  In

Cudeyro, the debtor's original schedules listed her interest in an automobile accident and

claimed a $7,500 exemption of this interest.  More than a year later, the debtor amended

her schedules to exempt her $55,000.00 interest in the settlement from the accident

litigation.  The trustee objected, but entered into a settlement with the debtor before a

hearing on the matter was held.  As a result of this settlement, the debtor was allowed to

exempt $11,630.00 of the $55,000.00 personal injury settlement.  The trustee continued

his administration of the estate by acquiring the personal injury funds, moving for an

extension of the deadline for filing proofs of claim, notifying creditors that funds were

available, and making distributions with funds from the personal injury settlement.

Almost four months after the exemption settlement agreement was reached, the debtor

amended her schedules for a second time and contended that the entire $55,000.00 was

10

exempt based on Pennsylvania state law.  The latter amendment was prompted by the decision in In re Lowenthal, 203 B.R. 576 (Bankr. E.D. Pa. 1996).  Cudeyro, 213 B.R. at 914 (footnote 7).

While the Court in Cudeyro did find that there was detrimental reliance on the part of the trustee in his attempts to administer the proceeds of the personal injury claim, the principal rationale for denying the amended exemption was the prior settlement agreement between the debtor and the trustee.  The Court stated:

> To allow the debtor to amend her exemption claim at this time would essentially allow her to rescind her compromise agreement with the trustee.  I do not construe Rule 1009(a) to allow the debtor to do indirectly what she cannot do directly: breach her settlement with the trustee.

In re Cudeyro, 213 B.R. at 921.  The Court further explained:

> I do not suggest that whenever a chapter 7 trustee acts upon an initial exemption claim that the debtor is always barred from any amendment….But here, where the trustee initiated litigation with the debtor on the question, and where the trustee negotiated a settlement, those steps - when added to the trustee's actions taken in reliance on the settlement - result in unfair prejudice to the estate by requiring it to further litigate the debtor's second effort to amend her exemption schedule (and, as a result, experience further delay[s in] the administration of this case).

Id.

The facts in the instant case markedly differ from those presented in Cudeyro.  As noted above, the debtor in Cudeyro had reached a settlement with the trustee with respect to a prior objection to her scheduled exemptions.  By subsequently amending her exemptions, the debtor effectively breached an agreement with the trustee.  Furthermore,

11

the trustee was already in receipt of the proceeds and had initiated some distribution to

creditors in accordance with the settlement.

In contrast, the Debtor in the instant case has never entered into any kind of

agreement with the Trustee that, if enforced, would require the denial of the amended

exemption.  More critically, other than the initiation of the Adversary Proceeding against

Chandler and the procured title examination, no significant steps have been taken in

administering the estate, mainly because there are no other assets to administer in this

case.  To date, no funds have been collected and no distributions have been made.

Accordingly, the Court finds that Cudeyro presents a different situation and its holding

does not support granting the Motion.

Finally, the Trustee directs the Court to the holding in In re Talmo.  185 B.R. 637

(Bankr. S.D. Fla. 1995).  In that case, a debtor did not initially claim two personally

owned pieces of property as exempt when the debtor filed the petition.  After one of the

properties was sold, and the secured creditor who encumbered both properties was paid,

the debtor amended his exemptions, claiming the second property as exempt under the

Florida homestead exemption.  The Court denied the debtor's amendment on the grounds

that various creditors had relied on the initial list of exemptions in their litigation

strategy.  The Court made the following statement:

> In sum, Talmo's creditors and estate were prejudiced by
> Talmo's failure to claim a homestead exemption at the
> outset of his Chapter 11 case or shortly thereafter because,
> as Talmo and his counsel intended, the inclusion of the
> 118-Acre Sub-Parcel as an asset of Talmo's estate
> precluded parties from taking certain litigation positions
> with respect to conversion of the case, stay relief, approval
> of the Benlate Settlement, and disposition of property after
> conversion. Moreover, the creditors and estate were
> prejudiced because the inclusion of the 118-Acre Sub-

12

> Parcel as an estate asset kept the case out of liquidation for a longer period of time than it would have been otherwise, so that creditors did not receive distributions on their claims as the Chapter 11 estate continued to accrue costs and expenses. This prejudice justifies the disallowance of the Amendment under the standard described in Doan.

Id. at 647-648.  The Court went on to find that the debtor's attempt to claim the remaining property as exempt was in bad faith. The Court explained:

> Talmo did not simply exclude an asset out of neglect or mistake.  Rather, he deliberately, and after substantial consultation with counsel, chose to exclude the property in question from the property claimed as exempt to pursue strategic goals in his Chapter 11 case.  No case cited by Talmo or found by the Court involved a similar fact pattern in which a debtor knowingly and intentionally included an asset in his estate for strategic purposes and then sought to exclude it when his plan failed. This "now you see it, now you don't" exemption strategy cannot be permitted.

Id. at 648.

Again, the facts at hand significantly differ from those presented in Talmo.  In Talmo, the Court found that debtor intentionally excluded the asset from a schedule for strategic reasons.  Conversely, in the instant case, the failure to exempt the Realty was an oversight, as conceded by Debtor's counsel at the hearing. See supra at 5-6.  Moreover, no facts have been advanced by the Trustee, nor can the Court identify any facts, that would provide the Debtor a tactical advantage by omitting the Realty from her scheduled exemptions.  Accordingly, the Court finds that the holding in Talmo is not persuasive.

The Court therefore concludes that the facts of this case do not present the "exceptional circumstances" required by Tignor to deny the Debtor her right to amend her exemption.  As stated above, the failure of the Debtor to list the exemption in her

original Schedule C was unintentional and a mistake.  No creditor will be prejudiced by

allowing the exemption. The Debtor, however, would suffer severe prejudice by the

denial of the exemption. And the prejudice suffered by the Trustee does not warrant the

denial of the Debtor's exemption of her interest in the Realty.

Notwithstanding the Debtor's right to claim the Realty as exempt, however, the

Court will also consider whether the prejudice to the Trustee can be remedied in a

manner that is less prejudicial to the Debtor than the outright denial of her exemption.

See Arnold, 252 B.R. at 789; In re Fournier, 169 B.R. 282, 285 (Bankr. D. Conn. 1994)).

A "Chapter 7 trustee's primary role is to maximize any available distribution to unsecured

creditors, and the distribution scheme contemplated by the Code 'encourages trustees to

act diligently and expeditiously' in liquidating and distributing all interests of the estate

in property not claimed exempt by the debtor."  Fournier, 169 B.R. at 285.  Accordingly,

"…in appropriate cases a trustee's efforts to collect property thereafter exempted should

be compensated."  Id. (citing In re Harris, 101 B.R. 210, 213 (Bankr. E.D. Cal. 1989))

(stating that diligent trustees should not go unrewarded and conditioning allowance of

debtor's amended exemption upon trustee being compensated by debtor for reasonable

fees and expenses); In re Blaise, 116 B.R. 398, 402 (Bankr. D. Vt. 1990); In re Myatt,

101 B.R. 197, 201 (Bankr. E.D. Cal. 1989); In re Stewart, 11 B.R. 447, 448 (Bankr. N.D.

Ga. 1981); In re Boyer, 7 B.R. 930, 932 (Bankr. D. Idaho 1981).  In Harris, supra, the

Court accurately described the position of the trustee:

>…the court notes the very practical problem facing trustees
>when debtors have either failed to claim assets as exempt or
>have made improper exemption claims.  When the trustee
>attempts to administer the unclaimed asset or objects to the
>improperly exempted asset, the debtor files an amended
>exemption claim pursuant to B.R. 1009(a) and the trustee's

> efforts are thwarted unless he can show bad faith,
> concealment of property, or prejudice to a party in interest.
> ….It is this court's position that the diligent trustee should
> not go unrewarded.  Thus, when he has taken appropriate
> action but is ultimately thwarted due to the debtor's
> overriding rights, debtor, having caused the trustee to act
> because of the debtor's initial negligence, should be
> required to reasonably compensate the trustee and
> reimburse him for his reasonable fees and expenses.

Harris, 101 B.R. at 213 (internal citations omitted).

In the instant case, the Trustee conducted the meeting of creditors on March 9,

2005, and on March 30, 2005, the Debtor provided the Trustee a copy of the deed

identifying the Realty as a property held as a tenancy by the entirety with Chandler. The

Trustee filed a notice of assets as well as an application to employ himself, which filings

specifically identified the Trustee's intent to sell the Realty, and neither of which the

Trustee would have filed if the Debtor properly claimed the exemption for the Realty.  At

that point, the Debtor should have been placed on inquiry notice that something was afoot

and re-evaluated her position.  Nearly five months passed before the Trustee initiated the

Adversary Proceeding to sell the Realty.  To be sure, the Trustee could have made

inquiry of the Debtor at any time between the meeting of creditors and the filing of the

complaint as to whether the Debtor had failed to exempt her interest in the Realty, thus

saving the Trustee the time and effort he incurred in pursuing the Realty.  However, the

Court agrees with the Trustee that it is a trustee's task administer the estate's assets are

they are presented and not to ensure that the Debtor has properly claimed her exemptions.

The Court concludes that the conduct of the Debtor has caused prejudice to the

Trustee.  That prejudice is measured by the $126.25 cost incurred in ordering the title

examination and the approximately six hours of attorney time incurred by the Trustee in

15

making the above described filings. That prejudice does not come close to the prejudice that the Debtor would endure if the Court were to grant the Motion. Nevertheless, the Court adopts the view taken by the Court in <u>Harris</u> and will order that the Trustee shall be reimbursed for a reasonable portion of the expenses he incurred as a result of the Debtor's failure to timely exempt the Realty.

In determining the amount of a reasonable reimbursement, the Court estimates that the total cost incurred by the Trustee is approximately $2,000.00, calculated as $126.25 for the title examination plus somewhat less than six hours of attorney time at approximately $350.00 per hour. While the Court agrees with the Trustee that he was under no obligation to inquire whether the Debtor had made a mistake on her Schedule C, the Court also concludes that the Trustee should share in some of the cost since he could have avoided the cost if he had chosen to do so. Accordingly the Court finds and concludes that an award of $1,000.00 is appropriate to reimburse the Trustee for his efforts in carrying out his duties under 11 U.S.C. § 704.

## *CONCLUSION*

For the reasons stated above, the Trustee's Motion to Strike the Debtor's Amended Exemptions (Docket 18) will be denied subject to the Trustee being compensated in the amount of $1,000.00 for a portion of the expenses that he incurred as a result of the Debtor's failure to exempt timely the Realty.

ORDER ACCORDINGLY.

16

Copies To:

Debtor
Debtor's Attorney
Trustee
U.S. Trustee
All Creditors on the Mailing Matrix


**END OF ORDER**